Lowry, Curator, v. Erwin.

ALFRED J. LOWRY, Curator of the vacant succession of Alexander McNeill, *v.* JAMES ERWIN.

No state court can inquire into any act or judgment of a court of the United States, upon the merits, nor say whether the judgment was rendered upon proper evidence, or is correct ; but when the proceedings of a court of the United States are set up as the basis of title, between persons litigating in our own courts, they may be looked into to ascertain whether the court had authority to render such a judgment, whether there is in fact such a judgment, or to ascertain whether the executory proceedings under it were legal.

The Marshals of the United States in Louisiana, in executing process, are bound, by an act of Congress, and the rules of the Circuit Court, to conform to the state laws ; and when their proceedings form a link in a chain of title set up, the state courts will examine into their legality. A state court cannot direct a Marshal how to act, nor direct process to him to be executed ; but when he has acted, and his acts are instrumental in changing the titles to property, they will, between litigants before a state court, be examined into.

Executory process by seizure and sale, is a summary and severe remedy, and the formalities prescribed by law must be strictly complied with, or the property will not be transferred, and the purchaser acquire no title.

To support a sale by a Sheriff or Marshal, under an execution or order of seizure and sale, there must be a valid judgment, by a court of competent jurisdiction ; otherwise the title will not be divested. Where there is a total want of jurisdiction, the proceedings are null and void ; and the competency of the tribunal may be inquired into.

An officer who executes process issued by a court without jurisdiction is a trespasser, and liable in damages to the party injured.

Under the grants of jurisdiction to the Circuit Courts of the United States, by the 11th section of the act of Congress of 24 September, 1789, those courts are of limited jurisdiction, having cognizance not of cases generally, but only of a few, under special circumstances ; and the presumption is, not that a cause is within its jurisdiction unless the contrary appears, but that it is without it, unless the contrary be shown.

Articles 42, 43, 44 of the Civil Code, provide for a change of domicil only as to persons already residents of the state, and not as to those coming from other states. As to them, an actual residence of twelve months within the state, is required, before a domicil can be acquired.

A Circuit Court of the United States is without jurisdiction *ratione personæ*, of a suit between parties, all of whom reside out of the State in which the court is held.

The provision of the 11th section of the act of Congress of 24 Sept., 1789, " that the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature," &c., means that where a citizen of the state can sue in the state courts against another citizen or resident, an alien, or a citizen of another state may institute a similar suit in the Cir-

Lowry, Curator, v. Erwin.

cuit Court of the United States, for a similar cause of action, and that he shall be entitled to the same remedy.

An order of seizure and sale cannot be obtained either from a state court, or a Court of the United States, against mortgaged property composing part of a succession represented by an executor, administrator, or curator, and in the course of administration in a Court of Probates.

A creditor, residing in another state, cannot sue in the Circuit Court of the United States, an executor, curator, or administrator of an estate, in course of administration in a Court of Probates, as an insolvent estate, and obtain judgment, and issue execution thereon in violation of the state laws, and take the property out of the hands of the officer administering it, to the injury of the domestic creditors. But if such executor, administrator, or curator, refuse to admit the justice of a debt claimed by an alien or non-resident, and to class it as an acknowledged debt against the succession to be paid as others, he may be sued in the Circuit Court of the United States, and a judgment liquidating the demand may be obtained ; but the judgment must provide that it is to be paid in due course of law, out of the assets in the hands of the executor, &c., to be administered; and no execution can be issued in favor of an alien or non-resident creditor, unless one could be issued, in a similar case, in favor of a domestic creditor.

Until the notice required by art. 735 of the Code of Practice to be given to a debtor, on an application for an order of seizure and sale against mortgaged property, has been given, and the time has elapsed, the order directing the seizure is not a final judgment, and no executory proceedings can be had under it.

A possessor in good faith, under a title which he honestly believes to be just in point of fact and form, is entitled to his improvements, and is not bound to account for the fruits and revenues, until the property is claimed by the real owner. The possession and title must be such as to entitle the party to the prescription of ten years. The possessor in good faith is one who has just reason to believe himself the master of the thing which he possesses, though he may not be so in fact, (C. C. 3414 ;) the possessor in bad faith, one who knows that he has no title, or that his title is defective. Ib. 3415.

A judgment by a court having no jurisdiction or authority to render it, is null and void ; and one possessing under it, is not a possessor under a just title and in good faith, so as to exempt him from liability for the fruits and revenues, until claimed by the owner. To exempt him, as a possessor in good faith, from such liability, the possession must have been valid in point of form. C. C. 3452.

A possessor without a just title, owes the fruits and revenues from the commencement of his possession.

The omission of counsel to interrogate a witness as to a particular fact, is no ground for a new trial.

A new trial will not be granted on an affidavit by one of the counsel of a defendant that he had discovered, since the judgment, new and material evidence, of the existence of which he was not aware at the time of the trial, though he had used due diligence, &c., where it is not shown that the defendant, or his other counsel, were also ignorant of the existence of such evidence, and the witness by whom the new fact is expected to be proved was examined on the trial of the cause.

APPEAL from the District Court of Madison, *Curry*, J.    The plaintiff, as curator of the vacant succession of Alexander McNeil, alleges, that the deceased owned and was in possession of a tract of land in the parish of Madison, with certain slaves, of the value of $100,000, producing an annual revenue of $25,000; and that the defendant fraudulently and collusively possessed himself thereof, and refuses to deliver up the same.    The curator prays, that the succession of McNeil may be decreed to be the owner, and be put in possession of the property and the improvements thereon, and that the defendant may be ordered to pay to it, twenty-five thousand dollars a year, counting from June, 1840, till possession shall be restored, for the fruits and revenues thereof.

Erwin, the defendant, answered, that he had purchased the property on the 6th of July, 1840, at public auction, made by the Marshal of the Circuit Court of the United States, for the Eastern District of Louisiana, under an order of seizure and sale in the case of *Andrew Erwin* v. *Hector McNeil, testamentary executor of Alexander McNeil, deceased,* as appears from the bill of sale annexed to his answer; that he paid therefor, $16,000 cash; and that he was put in possession thereof, with the exception of certain slaves, by the Marshal.    He avers, that he has made permanent improvements on the property, to the value of $50,000 ; that the value of the crops, which were made at heavy expense, was much less than alleged by the petitioner ; that the purchase was made in good faith, and is valid ; and that the proceedings are in full force, no effort having been made to reverse or annul the same. He pleads those proceedings in bar to the present claim.    Should the proceedings be declared null, he claims the reimbursement of the price, with interest, and the value of the improvements, before restoring the property.    There is a general denial of the other allegations of the petition; and the usual prayer for general relief.    The facts in this case are stated minutely and accurately in the opinion of the court, by *Garland*, J.    In the lower court there was a judgment for the plaintiff for the land, and for so many of the slaves as were proved to have been received by the defendant ; and in favor of the defendant in reconvention, and against the succession of Alexander McNeil, for a small sum, with interest from the date of the judgment, as the

balance of the price paid by the defendant for the property over and above the fruits and revenues received by him, and the value of the improvements he had made.    From this judgment the defendant took a suspensive appeal.

*Stacy* and *Sparrow*, for the plaintiff.  The Circuit Court of the United States had no jurisdiction, the maker and original holders and owners of the notes being all residents of Mississippi.    The assignee of the notes could not sue, as the original holders could not.   Act of 24 Sept., 1789, § 11.   16 Peters, 316.   There is no allegation that Hector McNeil is a citizen of this State, and the jurisdiction of the court does not appear from the record.   Under such circumstances the court must be presumed to be without jurisdiction.   4 Dallas, 10.    2 Peters' Digest, 579.    The order of seizure and sale issued by the Judge, not having been served on the debtor as required by art. 735 of the Code of Practice, could not have been appealed from (15 Peters, 170.   12 Ib. 328 ;) and the whole proceeding was null and void.   9 Wheaton, 546.   1 Peters, 340.   Besides, the will of Alexander McNeill has never been ordered to be executed by the Court of Probates, and Hector McNeil was never confirmed or recognized as executor, according to law.    Civil Code, arts. 1637, 1681, 1682.    Code of Pract. arts. 924, Nos. 1 and 6, and art. 931.    5 Mart. 572, 649. 5 La. 430.    10 La. 532.    The Court of Probates could alone appoint an executor, (12 Wheaton, 175,) and until this was done, there could be no representative of the succession, to be made a party to the proceedings in the Circuit Court.

The state laws provide for the distribution of the property of a deceased person, through the Courts of Probates.   This distribution must be made by one court.   The Circuit Courts of the United States having no jurisdiction over domestic creditors, could not exercise these powers.    Foreign creditors must submit to the mode of distribution adopted by the state tribunals.    Code of Pract. arts. 921, 924, (Nos. 5, 7, 8, 9, 13,) 987, 988, 990, 993, 1053, 1054.    2 La. 350.    4 La. 83.    The sale of the property by the Marshal was void, for the want of legal notice.    Act of Congress of 8 May, 1792, sect. 2.    Rules of the Circuit Court of Eastern District of Louisiana, adopted 20 Nov., 1837.    Code of Pract. arts. 735, 736.    7 Mart. N. S. 513.    6 La. 631.    Civil

Lowry, Curator, v. Erwin.

Code, art. 2054. The defendant, being legally and morally in bad faith, he must account for the fruits and revenues from the ime he came into possession. Civil Code, arts. 493, 1840, (No. 3,) 3414, 3415, 3445, 3447, 3450, 3451. 10 La. 285. 8 Mart. N. S. 525. 2 La. 521. The sale to the defendant was clearly fraudulent and collusive. All the *absolute* nullities in the proceedings in the Circuit Court may be opposed, when these proceedings are relied on by the opposite party as his title. 7 Mart. N. S. 185. 8 Ib. N. S. 246. 3 La. 245, 421. 4 La. 150. 2 Mass. Rep. 150.

*Dunbar, Hyams, Elgee,* and *Bemiss,* for the appellant. No State tribunal can inquire into the validity of any act or judgment of a court of the United States, which can only be examined by appeal to the Supreme Court of the United States, or by action of nullity before the court which rendered the decree. 4 Mart. 458. 5 Ib. N. S. 465. 6 Peters, 169. 7 Cranch, 280. 4 Cranch, 333, 434. 2 Peters, 169. 6 Ib. 657. 10 Ib, 477. The courts to which such a judgment may be presented, can only examine into the *competency* of the tribunal which pronounced it. 5 Mart. N. S. 465. 4 Cranch, 268, 294, 333. The Circuit Court was, in this case, competent. The objection that claims against a succession must be brought before the Probate Court, is untenable. See 4 Cranch, 294, 308. 5 Condensed Rep. U. S. 547. 14 Peters, 167. Admitting that the Circuit Court had no jurisdiction over a claim held by a citizen of another State against Alexander McNeil, yet Hector McNeil was the universal legatee of his brother, and, in this view, the proceedings must be considered as between two living persons. Civil Code, art. 1599 *et seq.* The Probate Court of Madison had no right to appoint a curator to McNeil's succession—it was not a vacant one. Civil Code, art. 1088. A dative testamentary executor should have been appointed. Ib. art. 1662. The judgment of the lower court is manifestly erroneous in charging the defendant with rents and profits *from the day of sale,* he being a purchaser in good faith. Civil Code, arts. 3414, 3416. 9 Mart. 349. 11 Ib. 558, 675. 1 Ib. N. S. 290. 2 Ib. N. S. 559. 5 Ib. N. S. 53. 7 Ib. N. S. 328, 360. 8 Ib. N. S. 181, 620. 7 La 59.

GARLAND, J. The plaintiff, as curator of the vacant estate of

Alexander McNeil deceased, alleges, that at his decease, he (McNeil) was the owner, and possessor of a tract of land, with a stock of horses, mules, cattle, sheep, hogs, and aratory utensils attached thereto ; that said land is cultivated as a cotton planta-tion, to which there is attached, a large number of valuable slaves named in the petition, all of which are of the value of one hun-dred thousand dollars, and produce an annual revenue of $25,000. He charges, that the defendant, in the month of July, 1840, since the death of said Alexander McNeil, illegally, and by fraud and collusion, and without legal title, took possession of the aforesaid property, and holds it, and has wrongfully converted it to his own use, with all its fruits and revenues, and pretends to be the owner of the same. The plaintiff, therefore, prays for a judgment for the said land and slaves ; that as the curator of the aforesaid suc-cession, he may be decreed to be the owner of the same, and put in possession thereof.

The defendant, after a general denial, avers, that on the 6th of July, in the year 1840, he became the purchaser, at a public sale made by the Marshal of the Eastern District of Louisiana, who had seized the property under a writ of seizure and sale, issued on an order or judgment given by the Circuit Court of the United States, for the Ninth Circuit, in the Eastern District of Lou-isiana. That said writ was issued in the case of Andrew Erwin against Hector McNeil, testamentary executor of Alexander McNeil, as mentioned in the sale from the Marshal, and in the record of the suit annexed. He alleges, that he gave the sum of $16,000 cash, for the plantation and slaves, which was applied to the payment of a mortgage debt owing by the aforesaid succes-sion to Andrew Erwin ; that after the purchase of said property, he (defendant) received possession of the same from the Marshal, in good faith, under the aforesaid title, except certain slaves which are named, which he states, were never delivered. He further avers, that under the title aforesaid, he proceeded to im-prove the land by clearing a large part of it, and placing valuable and permanent improvements on it, which are worth $50,000, and have enhanced its value to that amount. He denies, that the crops produced, amounted to the sum stated in the petition, and alleges, that they were made at great labor and expense. He asserts,

that the purchase is good and valid in law ; was made in good faith, and that all the proceedings remain in full force ; that no appeal has been taken from them, nor have they been reversed or annulled. He sets them up as a plea in bar to this suit. He further avers, that if the sale is annulled, and the plaintiff recover the property claimed, he must reimburse to him, Erwin, the purchase money, with interest, and also the value of the improvements, and that he cannot be dispossessed of the property, until the entire payment thereof. He further alleges, that he has sold all of the aforesaid property, and that none of it is in his possession.

The facts of the case are, that on the 8th day of January, 1835, Dawson and Nutt, by an authentic act of sale before the Parish Judge of the parish of Carroll in this State, sold to Alexander McNeil, the plantation and slaves in controversy, they being situated in that parish, now the parish of Madison. All the parties were at the time residents of the State of Mississippi, as appears by the act of sale, and none of them ever were residents of this State. The property was sold for $105,000, payable in five annual instalments, four of $25,000 each, and one of $5,000. All the payments have been made except the fourth, on which it is alleged $17,500 are due, with interest, from January, 1839. The notes given by Alexander McNeil, to secure the price of the property, were secured by a mortgage in the ordinary form. Alexander McNeil died in Mississippi, about the 28th of May, 1839. By his will, which contains several legacies of small value, he bequeathed the mass of his estate to Hector McNeil, also a resident and citizen of Mississippi, whom he appointed his testamentary executor. On the 6th of June, 1839, this executor, stating himself to be a citizen of Coahoma county, in Mississippi, presented a petition to the Judge of Probates of the parish of Madison, in which, after reciting that his testator had died at the date above stated in Mississippi, and left a will in which he was appointed sole executor and principal legatee, an unauthenticated copy of which was annexed to the petition, he proceeds to state, that two large estates were in the possession of his testator situated in that parish ; that, by the laws of Mississippi, as executor of the will, he is bound to present it for probate in Warren county in that State,

without delay ; but as the court would not sit for some weeks, he could not then have the will proved and recorded nor could he then present a duly certified copy of it, to be recorded in the said Probate Court of Madison. He avers, that " he is desirous of taking on himself the succession of his deceased brother's estate, according to the terms of his last will and testament, and the laws of this State ; he therefore prays, that an inventory of all the property in the parish, belonging to the estate of said Alexander McNeil, deceased, be taken ;" and he prays, the Judge to grant him the succession of the deceased Alexander McNeil, according to the terms of the will and the laws of the State ; and that he will grant any other, and whatever order may be necessary, to entitle him (Hector McNeil) to the possession, and succession of the property left by the deceased. Upon this petition no order or judgment was given by the Probate Judge ; but, on the 2d of July following, he proceeded to make an inventory of the property composing Alexander McNeil's succession, which is signed by Hector McNeil, as executor. The will was probated in Warren county, Mississippi, on the 24th of June, 1839, and a copy of it, and of the proceedings in the aforesaid court, were recorded in the Probate Court of Madison, on the 1st of July, 1839, one day before the taking of the inventory, but no order was taken on it, further than to record it. On the 1st of November, 1839, Hector McNeil made a declaration before the Parish Judge of the parish of Madison, stating, that he is the owner of large possessions in said parish, consisting of lands, slaves, &c. ; that he is desirous of acquiring residence, and to be entitled to the privileges of a resident of the State. He states his age ; that he is from Mississippi, and desires to pursue the business of planting, and to reside in, and make that parish his permanent domicil and home ; wherefore he prays, that his notice may be filed. The parol evidence shows, that Hector McNeil has a family who have constantly resided in Mississippi, and that he never resided personally in the parish of Madison, or State of Louisiana, only making occasional visits to the plantations in Madison.

On the 23d of May, 1840, Andrew Erwin, a resident of Tennessee, presented his petition to the Circuit Court of the United States, for the Eastern District of Louisiana, stating that he was

the holder of two of the notes given to Nutt and Dawson, due in January, 1839, on which $17,500, with ten per cent interest thereon are due, with costs of protest. He alleges, that those notes were given to secure a part of the price of the plantation and slaves sold as aforesaid, and were included in the mortgage stipulated in the sale. He avers, that Hector McNeil, testamentary executor of Alexander McNeil, is indebted to him in the amount due on said notes, which said Hector McNeil, it is alleged, resides in the parish of Madison; wherefore an order of seizure and sale is prayed for, commanding the Marshal to sell the plantation and slaves mentioned for the purpose of paying the aforesaid sum with interest and costs. On the day that this petition was filed, the District Judge of the Eastern District of Louisiana, not in open court, and signing himself "P. K. Lawrence, U. S. Judge," made an order in these words: "Inasmuch as the mortgage within mentioned, imports a confession of judgment, let an order of seizure and sale issue, for the sale of the property mortgaged, if the sum within claimed is not paid, after legal notice—New Orleans, May 23d, 1840." On the same day, the order of seizure and sale was issued by the Clerk, com manding the Marshal to seize and sell the plantation and slaves, which are specially described, after legal demand for cash, to satisfy the aforesaid demand. This writ went into the hands of the Marshal on the 25th of May, and on the 29th of the same month, he delivered the order of court and copy of mortgage to the defendant; also, a notice directed to Hector McNeil, testamentary executor of Alexander McNeil, in which it is stated, that the sum $17,500, with interest as claimed, is demanded of him, and that if, at the expiration of three days, the same is not paid, that the order of seizure and sale will be executed, and the plantation and slaves sold under it. The sum was not paid, and on the 1st of June a seizure was made of the plantation and fifty-seven slaves, which were, on the fourth of June, 1840, advertised for sale on the 6th of July following. Hector McNeil was notified of the seizure and day of sale, and the Marshal states, that he affixed advertisements at the doors of the court house, and Parish Judge's office, and other places in the parish, but these places are not named, and no proof exists of any advertisements at any other

places than those named. Appraisers were appointed, who ap-
praised the land at $13 per acre, and the slaves at various prices,
making altogether the sum of $23,845, and they were adjudicated
to the defendant for $16,000 cash, and the Marshal made him a
sale. It does not appear, that any money was paid by the pur
chaser; but William M. Beal, whom the Marshal calls the agent
of the plaintiff, Andrew Erwin, gave him (the Marshal) a receipt
for the sum, and he made a deed of sale, in which he omits to
state, that the price bid by the defendant had been paid. Un-
der this sale, the defendant claims the property. It is here pro-
per to state, that the land which was, on the 6th of July, 1840,
appraised at $13 per acre, was on the 1st of July, 1839, when
Hector McNeil, as executor, had an inventory made, appraised at
$50 per acre; and it is also proved, that about 400 out of 640
acres, are cleared; and that it is worth from $35 to $40 per acre
to clear such land. Nothing seems to have been allowed for
stock and improvements by the appraisers. The slaves were
appraised in July, 1840, for about half what they were in July,
1839. It is further to be noticed, that no explanation is given
how these notes got into the hands of Andrew Erwin, in Tennes-
see. No transfer of the mortgage was made to him; without
which, no Judge of a state court could have granted an order of
seizure and sale, without a violation of law. The parol evidence
shows, that besides the slaves mentioned in the sale to the defen-
dant, there were thirty-two or three, more slaves on the plan-
tation, who possibly belonged to the defendant. The overseer
on the plantation speaks of there being generally from seventy-
five to eighty-five hands on the place. One of the appraisers at
the Marshal's sale, had been McNeil's overseer on the place,
from 1835, to July or August, 1839. He says, that he knew all
or nearly all the slaves purchased from Dawson and Nutt, yet
thirteen mentioned in the order of seizure are stated not to have
been found. Another witness, who was an overseer for Hector
McNeil, says, that in the year 1840, six hundred and twenty-five
bales of cotton, of 400 pounds each, were made on the whole
plantation. In 1841, there were 488 bales, of four hundred pounds
each, made. In 1842, he thinks there was not more than 350 bales
of the same weight. It is also in evidence, that the price of cot-

ton for the crop of 1840, was about an average of ten and a half cents. For the crop of 1841, an average of eight cents; and for that of 1842, about six cents. The place purchased by the defendant adjoined other lands, which it seems all formed one plantation. The expense of the plantation in 1840, was not less than $5,000; in 1841, about $6,000; and in 1842, about 4,000. Since the sale, about ninety acres of land have been cleared on the tract purchased by the defendant. Nine negro houses, four cisterns, two corn cribs, a stable and corn mill, have been built, the whole worth $2800; and it is worth from $35 to $40 per acre, to clear the land, as the ninety acres have been cleared. It is also proved, that from New Orleans to the parish of Madison, is about 430 miles; and it is further shown, that neither Alexander McNeil, nor Hector McNeil, ever had an actual residence in the parish of Madison. One witness says, that he had known both of them from the year 1833; that Alexander McNeil was a citizen of Mississippi to the day of his death; and that Hector McNeil was always a citizen of that State. The overseers who were on the plantation say, that Hector McNeil never lived on it; that in 1839, and 1840, he lived with his family, a part of the time in Vicksburgh, and the remainder near Warrenton, Mississippi, on a plantation he had there. The defendant offered in evidence all the proceedings relating to the order of seizure and sale, and the Marshal's deed, and also offered the petition of Hector McNeil addressed to the District Court, in and for the parish of Madison, praying for an injunction against the New Orleans Exchange and Banking Company, for the purpose of showing, that in that petition he stated himself to be a citizen of Louisiana. He commences it: "The petition of Hector McNeil, testamentary executor of the last will and testament of his brother Alexander McNeil, of said parish and State," &c. In no part, is it stated, that he is a citizen of Louisiana. This petition was filed on the 16th of July, 1840, ten days after the Marshal's sale. In it, he states, that the succession of Alexander McNeil owes many large debts; that he (Hector) is administering the succession, under the order of the Court of Probates of the parish of Madison, where the will of his testator is recorded, and he confirmed as executor; that the Exchange Bank of New

Orleans sets up a large claim, pretended to be secured by mortgage, and had, on the 18th of May, 1843, obtained an order of seizure and sale against him, whether as executor or universal heir he does not say, and that the Sheriff had seized a number of slaves and advertised them for sale, all of which he alleges to be illegal. He states, that the District Judge of the Ninth District, had no jurisdiction, or authority, to issue an order of seizure and sale in favor of said Bank, the succession being in a course of administration; and further, that the notes secured by the mortgage are not payable to the said Bank, but to other persons, who have endorsed them, and that there is no authentic transfer of the mortgage from the original payee to the said Bank, without which no order of seizure and sale could be legally issued. We thus see, this executor on the 6th of July, 1840, standing quietly by, and permitting a large part of the property of the succession he was administering, to be sold at a ruinous sacrifice, under the order of seizure and sale under which the defendant claims, in which the very defects he sets forth in this petition exist. He did not complain *then*, that no injunction was asked for; but a few days after, against another large creditor, he is vigilant in defence of the rights of the succession.

We have stated the facts of the case fully, and from them we have strong grounds to believe, that there was collusion between the parties to the sale, under which the defendant claims.

Upon the pleadings and evidence, the District Judge gave a judgment in favor of the plaintiff, for the land and slaves. He annulled the sale made by the Marshal, and decreed the defendant to account for the crops of cotton made in the years 1840, 1841, and 1842, which, after deducting the expenses of the plantation, and the value of the improvements made by the defendant, produced an amount nearly sufficient to repay him the price he alleged, that he had paid for the whole property. This sum the Judge compensated against the price so far as it extinguished it, and gave the defendant a judgment for the remainder, from which judgment he has appealed.

In this court, the counsel for the defendant calls our attention to the exceptions set up in the answer, in relation to the jurisdiction of the court that tried the cause. He avers, that no State

tribunal can question, or inquire into the validity of any act or judgment of a court of the United States, and that such an act or judgment can only be inquired into, on appeal to the Supreme Court of the United States, or by a direct action of nullity before the tribunal which rendered the decree. We admit, that neither this tribunal, nor the inferior courts, can revise a judgment of the United States Court, upon the merits. We cannot say whether it was rendered upon proper evidence, or is correct in itself; but we do not say, and have so decided recently, that when the proceedings of the Federal Courts are set up as the basis of title, between persons litigating in our courts, that then we will look into their proceedings, for the purpose of seeing whether they have jurisdiction or authority to render such judgment or decree; whether there is such a judgment; and also for the purpose of ascertaining, whether the executory proceedings under it have been conformable to law. *Garrard, Executor, and others* v. *Reed*, 5 Robinson, 506.

The second exception is, that a state tribunal, cannot annul or inquire into the acts of a Marshal of the United States, when acting under the authority of a decree of the United States Court, when such acts are only voidable, not void. Upon this point, and the one first stated, the counsel for the defendant have not furnished us with satisfactory authorities. We have recently considered the subject in the case just cited, and have come to a different conclusion. The Marshals of the United States in Louisiana, in executing the process of their courts, are bound to conform to the State laws, by an act of Congress and the rules of the Circuit Court; and when their proceedings form a link in the chain of title set up, we are bound to examine into the legality of them. A state court cannot direct a Marshal how he shall act, nor send process to him to be executed; but when he has acted, and his acts are instrumental in changing the title to property, then, between litigants before our courts, we will examine whether his acts have legally effected that object.

It is well settled, in our jurisprudence, that in forced alienations of property, there must be a reasonable diligence and a compliance with the forms of the law, under the penalty of nullity. When a party resorts to the summary and more severe remedies

allowed by law, he is then held to a stricter compliance with every legal formality ; and the executory process of seizure and sale, may be considered as one of severity. It is obtained *ex parte*, and all the proceedings under it are to be scrutinized closely. It necessarily follows, that if the law has not been complied with, the property is not transferred, and the purchaser ac quires no title. 11 Mart. 607. 9 La. 542. 6 La. 623. It is equally well settled, that to support a sale made by a Sheriff or Marshal, under an execution or order of seizure and sale, there must be a valid judgment rendered by a court of competent jurisdiction, without which the title is not divested. 3 Robinson, 120. An officer who executes process issued by a court which has no jurisdiction, is a trespasser, and liable in damages to the party injured.

In 13 La. 431, it is said, if there is a total want of jurisdiction, the proceedings are null and void, and confer no title. 1 Peters, 340. 2 Peters, 157. It is, in fact, not denied, that we can inquire into the *competency* of the tribunal which rendered the judgment that caused a seizure and sale of the property.

The first question is, had the Circuit Court of the United States jurisdiction over the persons, or subject-matter, in granting the order of seizure and sale ; and the second, was there such a judgment as authorized the sale in question. The third question will be, have the formalities of the law been complied with by the Marshal.

The 11th section of the judiciary act of 1789, (Ingersoll's Digest, 370,) says : "The Circuit Courts shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law, or in equity, where the matter in dispute exceeds, exclusive of costs, the value of five hundred dollars, and the United States are plaintiffs, or petitioners ; or an alien is a party ; or the suit is between a citizen of the State where the suit is brought, and a citizen of another State. Nor shall any District, or Circuit Court, have cognizance of any suit to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assign-

ment had been made, except in cases of foreign bills of ex-
change." Under this grant of jurisdiction, the Supreme Court
of the United States has said, that the Circuit Court is one of
limited jurisdiction, and has cognizance, not of cases generally,
but only of a few specially circumstanced ; amounting to a small
portion of the cases, which an unlimited jurisdiction would em-
brace ; and that the fair presumption is not, as with regard to a
court of general jurisdiction, that a cause is within its jurisdiction,
unless the contrary appears ; but rather, that a cause is without
its jurisdiction, unless the contrary appears.  4 Dallas, 8.  1
Cond. Rep. 205.  It will, therefore, be seen; that the presumption
of law is against the power to issue the order of seizure and
sale.

In order to take jurisdiction over the parties to the original
suit, the defendant must have been a citizen of this State.  The
act of mortgage under which Andrew Erwin proceeded, shows,
that Alexander McNeil, was a citizen of Mississippi, and the
parol evidence proves, that he resided there to the day of his
death.  His will was probated there, and a copy of it presented to the
Parish Judge of Madison, as a foreign testament, and recorded and
acted on as such.  The first we hear of Hector McNeil is, his pe-
tition to the Parish Judge of Madison, in which he, in terms, states
himself to be a citizen of Coahoma County, in the State of Missis-
sippi.  We see no intention manifested to become domiciliated in
Louisiana, until the declaration made in November, 1839.  That
declaration did not give him a domicil in the State.  In the case of
Boon v. Savage, 14 La. 169, we said, that articles 42, 43, 44, of
the Civil Code, only provide for a change of domicil by persons al-
ready residents of the State, and not by those coming from other
States.  As to them, the law requires an actual residence of
twelve months in the State, before a domicil is acquired ; and we
therefore maintained an attachment against Savage as a non-resi-
dent.  His case is precisely similar to that of Hector McNeil.
He had made the declaration of intention, and given notice before
the Parish Judge ; he had a plantation in the State, but the evi-
dence showed, that he generally resided in Mississippi.  This
doctrine we have since confirmed in a case in the Eastern Dis-
trict.  Vide B. & C's Digest, p. 286, 287.  The parol evidence

in the case, completely negatives the idea, that Hector McNeil was ever a citizen of, or had a domicil in Louisiana. The statement that he was so, in the petition presented to the Circuit Court in New Orleans, was, therefore, a fraud, and his acquiescence in it proof of his participation in it. It was impossible for him to have acquired a domicil, even if he had manifested his intention more strongly than he did. The Circuit Court was, therefore, without jurisdiction *ratione personæ.*

Had the Circuit Court jurisdiction *ratione materiæ ?* We have shown that the presumption of law is against it. The judiciary act quoted, declares, that the jurisdiction is "concurrent with the courts of the several states, of all suits of a civil nature," &c., which we understand to mean, in cases where a citizen of the state can bring a suit in the state court against another citizen or resident, an alien, or citizen of another state may bring a similar suit in the Circuit Court of the United States, on a similar cause of action, and that he will be entitled to the same remedy on his judgment.

We now put the question, can any citizen of Louisiana obtain from a District or Parish Court, or from the Court of Probates itself, an order of seizure and sale against mortgaged property, composing part of a succession, in the course of administration in the Court of Probates, and represented by an executor, administrator, or curator? We are certain no such process could be issued from a state tribunal. Where then is the authority of the Circuit Court to give any such order, or judgment as it did? It is not in the act of Congress, nor can it be found in the state laws, from which the Circuit Court derives its only authority to grant decrees or orders of seizure, if it has any such power at all.

The counsel for the defendant has strongly pressed on us, a decision of the Supreme Court of the United States, in 14 Peters, 67, in which that tribunal says, that a suit in the Circuit Court for Alabama, against an administrator, shall not abate in consequence of a plea that the estate so represented is insolvent, and is being administered under a statute of the state, which statute specially exempts foreign contracts from its operation. But the court goes on to argue and decide a question not before it, and declares that, if the exception in the statute did not exist, still the action

Lowry, Curator, v. Erwin.

would not abate.   This is possibly true ; but decisions on ques-
tions not before a court, are in general not entitled to much weight;
and we see no peculiar force in the reasoning on which this deci-
sion is based.   It may have been, that the demand of the plaintiffs
was not admitted by the administrators, and that, when sued, they
availed themselves of every plea to get clear of the action.   The
decision was on a plea in abatement ; but the Supreme Court did
not say, and we doubt if it ever will say, that a creditor, residing
in another state, can sue in the Circuit Court of the United States,
the executor, or administrator of an estate, being administered in
the Court of Probates as insolvent—obtain a judgment—and issue
execution on it in violation of the state laws, and take the proper-
ty out of the hands of the executor or administrator, and leave no-
thing for the domestic creditors.   This court in 2 La. 351, said :
"We have looked in vain for anything in the constitution of the
United States, which gives this advantage to a citizen of another
state (to seek a different remedy in the United States court,) over
our own citizens ; and which makes right depend not on contract
or the law of contracts, but on the tribunal where the remedy is
sought."   4 La. 83.   We do not intend to deny, that if an execu-
tor, administrator, or curator, refuses to admit the justice of a debt
claimed by an alien, or non-resident creditor, and will not class it
as an acknowledged debt against the succession to be paid as
others, that he may be sued in the Circuit Court of the United
States, and a judgment liquidating the demand obtained ; but that
judgment must state that it is to be paid out of the assets in the
hands of the executor, &c., to be administered in due course of
law, and no execution can issue in favor of the alien or non-resi-
dent creditor, unless one can be issued in favor of the domestic
creditor in a similar case.   We are, therefore, of opinion, that the
Circuit Court of the United States for the Eastern District of
Louisiana, had no jurisdiction or authority to issue the order of
seizure and sale against Hector McNeil, testamentary executor
of the succession of Alexander McNeil, deceased.

But, say the counsel for the defendant, if the proceedings were
not good against the testamentary executor, they were legal
against Hector McNeil as the universal legatee, or heir of Alex-
ander McNeil deceased.   The first answer to this argument is,

that the proceedings are not against him, in that capacity ; and the second, that the question of domicil is entirely opposed to the position. If the defendant was not a citizen, the process could not have been issued. The Circuit Court has no jurisdiction, when neither of the parties are citizens of the state in which the action is instituted. Peters' C. C. R. 431.

There is another objection: the defendant shows, that the estate of Alexander McNeil is largely indebted, and the executor was bound to administer it for the benefit of the creditors ; and in the petition filed on the 16th July, 1840, against the Exchange Bank, he alleges that he is so doing. It appears to us, that it is not competent for the defendant to depart from the record under which he avers that he claims, and to rely upon a right no where set forth in the answer.

The defendant's counsel further contend, that these nullities and objections cannot affect him, as he is a purchaser in good faith, and without knowledge of any of them ; and that the only remedy is by an action to annul the proceedings in the Circuit Court of the United States, or by an appeal to the Supreme Court. In the first place, we doubt very much the ignorance and want of knowledge of the defendant ; and secondly, we consider the judgment or order, a nullity, having been given by a court having no authority to render it.

We come now to the proceedings of the Marshal, and to see how far he has complied with the legal formalities in the premises. There is no doubt, that the Marshal and Clerk of the court were bound to act in conformity to the articles of the Code of Practice, in relation to executory process. The 735th article provides, that " in obtaining this order of seizure, it shall suffice to give three days notice to the debtor, counting from that on which the notice is given, if he resides on the spot, adding a day for every twenty miles between the place of his residence and the residence of the Judge, to whom the petition has been presented." The notice was given to Hector McNeil on the 29th of May, 1840, requiring him to pay within three days. On the 1st of June the property was seized, advertised on the 4th, and sold on the 6th of July, 1840. It is proved, that from New Orleans, the residence of the Judge, to the parish of Madison, is 430 or 440 miles.

At least twenty-five days notice was, therefore, necessary.   The Supreme Court of the United States, in 15 Peters, 167, say, until this notice is given, and the time has elapsed, the order directing the seizure is not a final judgment, upon which a writ of error will lie.   If this be so, no executory proceedings can be had under it.   The Circuit Court and the Marshal are clearly bound by this construction of the law, and the sale was, therefore, premature, according to that decision.   See also 7 Mart. N. S. 513.   15 La. 184.

The next question is in relation to the fruits, revenues, and improvements.   The defendant alleges, that he is a possessor in good faith, and ought only to account for the fruits and revenues, from the inception of the suit ; and he claims the value of the improvements made by him.   The inferior Judge thought he was not a possessor in good faith, and decreed that he should account for the fruits and revenues of the years 1840, 1841, and 1842, that is, from the date of his possession.   He made an allowance for the expenses of the plantation ; also for the full value of the improvements placed on the land, and for clearing ninety acres. The balance of the value of the crops, the Judge compensated against the sum of $16,000, which it is pretended the defendant paid for the land, with interest thereon, which left a small balance in favor of the defendant, for which he had a judgment.

It is very certain, that a possessor in good faith, under a title which he honestly believes to be just in point of fact and in form, is not bound to account for the fruits and revenues, until the property is claimed by the real owner.   The possession and title upon which the fruits and revenues can be retained, must be such, as the party must have, to entitle him to the prescription of ten years. Article 3414 of the Civil Code, declares, that the possessor in good faith is he, who has just reason to believe himself the master of the thing which he possesses, although he may not be so in fact.   The next article says, that the possessor in bad faith is he, who knows that he has no title, or that his title is vicious and defective.   It is hardly possible for any one to read the facts of this case, and doubt that the defendant was not aware of a defect in his title.   Article 3450 of the Civil Code defines a *just title* to be one, which the possessor may have received from any one, whom

Lowry, Curator, v. Erwin.

he *honestly* believed to be the real owner, provided the title were such as to transfer the property. The title must also be valid in point of form ; for, if the possession commenced by a contract void in that respect, it will not protect the possessor, as being in good faith. Art. 3452. In 7 Mart. N. S. 112, this court said, that a possessor without a just title, owes the fruits from the beginning of his possession. That was a case, in which the executor of a deceased person sold the property without an order of the Court of Probates, and it was shown that the defendant was ignorant of the fact. The court said, that he was bound to know whether there was an order, or not. So in 8 Mart. 629, a sale made by a tutrix, of minors' property, without a compliance with the formalities of the law, was held not to be a just title, under which a party can possess in good faith. The authorities cited by the coun-. sel for the defendant, do not contravene any of these positions. They all go to show, that the possessor in good faith is entitled to his improvements, and to the fruits and revenues, which is undeniable ; but they have not convinced us that the defendant is such a possessor. It having been shown, that a forced sale, without a judgment to authorize it, is an absolute nullity, it only remains for us to say, that a judgment given by a court having no jurisdiction or authority to render it, is also a nullity, and has no effect, and cannot form a basis of title.

We are, therefore, of opinion, that the District Judge did not err in considering the defendant as a possessor in bad faith ; and for that reason, accountable for the fruits and revenues from the date of his possession.

In stating the value of the crops, the expenses of the plantation and the improvements, we do not think the Judge erred ; and his application of the balance found against the defendant, to discharge the price paid by him for the property, with interest, is correct.

After the judgment was rendered in the lower court, a member of the bar, who does not appear from the record to have been of counsel in the case, offered his affidavit, stating that he was one of the counsel for the defendant in this suit, and that he had discovered, since the rendition of the judgment, new and material evidence in the case. He then adds, that he expects to prove by Thomas W. Amonett, the waiver of legal delay after seizure, by

Hector McNeil, the testamentary executor of Alexander McNeil; and that he was not aware of the existence of this evidence on the trial, though he had used due diligence to obtain the necessary testimony. The witness by whom this new and unknown fact is expected to be proved, was examined on the trial of the cause. He was the overseer of the defendant for a considerable time, as he states in his testimony, and appears to have been one of the principal witnesses in the case; yet he never stated that there was any waiver of the legal delay in giving the notice, nor was he interrogated on that point. It is not shown, that the defendant and the other counsel in the case were also ignorant of this fact. The cause was tried at the November term, 1842, and the Judge held it under advisement for some time, and the judgment was by consent entered on the records at the May term, 1843. This affidavit was made at that term of the court. In 6 Mart. N. S. 327, and 7 Ib. N. S. 125, this court said, that affidavits of this description, for the purpose of obtaining a new trial, ought to be received with caution, and under great restriction. 18 La. 531. In 3 La. 383, it was held, that a new trial would not be granted on the ground of newly discovered evidence, if it appeared that the evidence consisted of the testimony of a person who had been summoned as a witness, and dismissed without examination. If there was a waiver of the legal delay as to the notice, it is a little remarkable the Marshal should not have mentioned it in his return; and it is scarcely credible, that the defendant should have been ignorant of the fact, and the overseer, who was on the place at the time, have known it. It does not appear that any diligence was used, previous to the trial, to procure such evidence. The omission of counsel to interrogate the witness as to a fact, is no ground for a new trial. If the fact had actually been proved, we think it would have been another link in the chain of circumstances, going to prove collusion between Hector McNeil and some of the other parties concerned in this transaction. The Judge did not err in overruling the motion for a new trial.

In examining the final judgment, we find the Judge has fallen into an error, which it is necessary for us to correct. After the application of the proceeds of the fruits and revenues to the price which the defendant had paid for the property, and to the interest

Lowry, Curator, v. Erwin.

thereon, there remained a balance of $436 55 in favor of the de-
fendant; for which sum, the Judge gave him judgment against
the succession of Alexander McNeil, deceased, as upon a demand
in reconvention.   In this he erred.   The defendant, in his answer,
did not pray for a judgment in reconvention, but asked, that in
case of eviction, the price he paid should be refunded to him be-
fore a writ of possession should issue.   This, he had a right to
demand.   Besides, the District Court had no authority to give a
judgment against the estate of McNeil, which is being adminis-
tered in the Court of Probates.

The plaintiff has asked us, in the event of our affirming the
judgment, to remand the case, for the purpose of enabling him to
recover the fruits and revenues since the year 1842, the defendant
having taken a suspensive appeal, and thereby kept the plaintiff
out of possession.    We think it best to put an end to the present
contest, and to reserve to the plaintiff, his right to claim the fruits
and revenues since the 1st January, 1843.

The judgment of the District Court, so far as it decrees to the
plaintiff the right to, and possession of the plantation and slaves
described in the petition, is affirmed; also as to the nonsuit in re-
lation to the slaves Kitty Dixon, and her children, and Little Henry
or Henry Lee, and as to the fruits and revenues, and their appli-
cation to the price and interest said to have been paid by the de-
fendant; but as relates to the judgment of $436 55, with interest,
as stated therein, against the succession of Alexander McNeil,
deceased, the same is annulled and reversed; and we do order
and decree, that no writ of possession issue in this case, to put
the plaintiff in possession of the plantation and slaves, until he pay
the defendant, or deposit in the hands of the Sheriff of the parish,
to the credit of the defendant, the sum of $436 55, with interest
thereon, at the rate of five per cent per annum, from the 18th day
of March, in the year 1843, until the day of payment, or deposit;
the appellee paying the costs of the appeal.*

---

* The Counsel for the defendant, prayed for a re-hearing as to so much
of the opinion as pronounced their client a possessor in bad faith, and, there-
fore, responsible for the fruits and revenues of the property from the date of

the purchase. The facts of the case, as disclosed by the record, are simply these, so far as *James Erwin*, the defendant is concerned.

On the 6th of July, 1840, he purchased, *at a sale made by the Marshal, of the United States, under an order of seizure and sale emanating from the Circuit Court of the United States*, for the Eastern District of Louisiana, a certain plantation and slaves, the property of the estate of one Alexander McNeil, or his universal heir Hector McNeil, the said order issuing at the suit of a man named *Andrew Erwin ;* that he paid sixteen thousand dollars cash, for the same, being more than two-thirds of the appraised value *on oath*, of said property.

That, on the 24th day of April, 1841, *ten months after* James Erwin bought the property as above stated, the plaintiff in the present action, A. J. Lowry, got himself appointed curator of the *vacant succession* of Alexander McNeil, deceased, when the record shows, by facts incontrovertible, that in no point of view was it a vacant one. C. C. 1088. That on the 16th of August following, he instituted the present petitory action against the defendant, the *citation* however not being served until the 4th of December, 1841, one year and five months from the date of his purchase ; and that he obtained a judgment against Erwin :- 1st. Because the court which issued the order of seizure and sale had no authority to issue it ; and 2d. Because the formalities required in the alienation of property at a forced sale, had not been observed.

Where then are the *facts* which make James Erwin a possessor in bad faith ? That he happens unfortunately to bear a surname similar to that of the man who obtained the order of seizure and sale, is not to be construed into a presumption of relationship, or interpreted as a badge of collusion and fraud. Amidst all the evidence there is not a single *fact* which will stamp, or has stamped James Erwin as a possessor in bad faith. That the District Judge " thought he was," is of little moment. The case does not appear to have been argued below, and even if it was, the *suspensive* appeal taken by the defendant, is strong presumption, at least, that he felt that the lower tribunal had done him a gross injustice by its decision.

If James Erwin be a possessor in bad faith, from the facts stated, then is every man, who purchases at a Sheriff's or Marshal's sale, when there are illegalities in the judgment, under which the officer proceeds, or a want on his part of those formalities which the law requires him to pursue ; and yet we are unwilling to believe, that this tribunal is prepared to recognize such a doctrine. That hitherto it has *not* done so, is apparent from its decisions. In the case of *Poultney's Heirs* v. *Cecil's Executor*, 8 La. 424, this court held, that the rights of purchasers will be maintained, even though the judgment be subsequently reversed, *for want of jurisdiction* in the court which rendered it ; and though this may be considered as carrying the doctrine very far, for applied to the present case it would perfect Erwin's title, if the Marshal had observed the delays which the law requires in forced sales, yet it is very evident, that such a purchaser could not, and would not be deemed a knavish possessor. The

Civil Code, art. 3414, says, " the possessor in good faith is he who has just reason to believe himself master of the thing which he possesses, although he may not be in fact, as happens to him, who buys a thing which he supposes to belong to the person selling it to him, but which in fact belongs to another." Let us test the quality of the defendant's possession by this rule. Had James Erwin "*just reason*" to believe himself owner of the property claimed from him? We say that he had :—

1st. He possessed as owner, by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of; for the law *presumes* this ignorance until the institution of a suit for the recovery of the property by the real owner. Civil Code, art. 95.

2d. He purchased at a public sale made by the United States Marshal.

3d. Although not required by the law to examine into the validity of the judgment rendered by the United States Court, yet if the defendant had done so in the present case, he would have learned that the order for the seizure and sale of the property, in the first instance was obtained by one of the oldest lawyers in the City of New Orleans, (Alfred Hennen, Esq.,) ; that the same was granted by a Judge of the United States. Had he still been scrupulous on the mooted point of jurisdiction, counsel would have informed him, that the Supreme Court of the United States, in 14 Peters, 67, had settled the question. Had he still doubted, he would have been told, that Hector McNeil, the defendant to the order of seizure, was the *universal legatee* of Alexander McNeil, and that, although in the process he was styled testamentary executor, yet, being *in fact* heir at law and universal legatee of Alexander McNeil, it smoothed the apparent difficulties in the way.

Had he been told, that Hector McNeil was not a citizen of Louisiana, he would have satisfied himself that this objection could not avail, by turning to his declaration of domicil, on the public records.

Had he been warned, that Alexander McNeil's succession should be represented by a curator as a vacant succession, he would have pointed to the 1088th art. of the Civil Code, and might well have asked, is this a succession that no one claims? Are all the heirs of Alexander McNeil unknown? or have the known heirs renounced it?

Had he been warned, that the smallness of the price which he gave for the property, would be construed or deemed a badge of fraud, he would have pointed to the sworn appraisement made at the sale, and to the fact of the universal depression of property, all over this State at least. Can it then be said, in the face of all this, that " he well knew his title to be vicious and defective," Civil Code, art. 3413 ; for, to constitute him a possessor in bad faith, such knowledge is necessary. In *Pearce* v. *Frantum*, 16 La. 414, this court held the defendant to be a possessor in good faith, although the evidence clearly established, that Frantum had stated to a witness, that " he *well knew* he had no title to the land." Knowledge of the defective character of his title must be proved by clear and incontestible facts, not deduced from mere surmises or suppositions. In fact, to admit the doctrine, that a purchaser at a

Sheriff's sale is necessarily in bad faith, because there are informalities in the proceedings, would tend at once to the ruinous sacrifice of every man's property which might be exposed at such a sale.

The case cited from 7 Mart. N. S. 112, is believed not to be analogous to the present. The court decided that case on the grounds, that the very act of sale under which the defendant claimed, purported to be a private sale of succession property by an executor, when the law was clear, that executors could only sell at auction, and under an order of the court; the title, or the deed was not, and could not be translative of property; it was null on its face. The authority from 8 Martin, 629, supports the same view. But here the title is not to be found in the deed; but in the *adjudication* by the Marshal, 7 Mart. N. S. 227. It was under that adjudication, that the defendant's, Erwin's, title vested until evicted by a superior one. The Code of Practice, art. 695, says, that " the act of sale adds nothing to the force and effect of the adjudication, but is only intended *to afford the proof of it.*" In *Balfour* v. *Chinn*, 7 Mart. N. S. 358, this court held, that the purchaser was in good faith, until the institution of a suit, although he had bought property to which the defendant in executon had no manner of title. Every presumption of law then is in favor of the good faith of the defendant, Erwin—the judgment, the sale by the Marshal, and the adjudication. Such strong presumptions, ought not to be lightly disposed of; they ought only to yield to *facts.*

Fraud will not be presumed. Here the plaintiff charges fraud and collusion, but fails to advance even one witness, one fact, or one circumstance to prove it. All is presumption—presumption. " *Vox et præterea nihil.*"

*Re-hearing refused.*