BREAUX, C. J.
Walter Doiron, aged not quite 16, lost his right hand and part of his arm while at work for the defendant. His complaint in that connection is that he was taken from the work he was employed to do as “sweeper” and “cleaner” of the shingle mill, and put to work at the “swing saw” in one of the apartments of the lumber plant, known as the “head mill,” and while thus at work met with the accident.
The “swing saw” at which he was working is made to swing back after its use in sawing each piece; that is, after sawing through the piece, it swings back some 10 or 12 inches, carried back by the weight -attached to it. The rope by which the weight was attached, plaintiff alleged, broke, thereby released the saw from its hold of the weight, and, when swinging forward, it struck plaintiff’s arm, and lacerated it so that amputation was the only alternative. He states that he did not have the required experience or skill for the work, and had never received the least instruction how to operate the saw and avoid danger. He charged that defendant was grossly and wantonly negligent in compelling him to work at the saw or forfeit his employment, and that he had a right to safe appliances, which were not furnished him.
*621 Defendant admitted that plaintiff was a “sweeper” and “cleaner” as alleged by him, but specially denied that its foreman ordered plaintiff to work and operate the saw; and urged, on the contrary, that it was plaintiff who took up the work in direct violation of the orders and rules of the defendant company, and that he was at all times, while operating the saw, outside of the scope of his employment.
There are two questions — whether plaintiff was ordered to operate the swing saw; next, whether the rope by which the weight was fastened to the saw broke, owing to the negr ligence of the defendant.
We will at this time take up the motion for a new trial. The averments of defendant in this connection were that one of its employ és, Gauthreaux, worked near plaintiff on the day of the accident, and that by him it would prove that the, rope connecting the weight and the saw did not break; that a witness, Numa Boudreaux, another employé, who testified favorably to plaintiff, did not go to the saw, as he swore he did, the morning following the accident; that no one went to the swing saw on the day following, as sworn to by Boudreaux, until Messrs. Shaw, Edmondson, and Broussard, officers and employé, examined it on the day following; that Gauthreaux was not placed on the stand before because defendant inferred that he was unfavorable to its cause.
Counsel for defendant added his oath to the application for a new trial, setting forth that the witness Gauthreaux, when questioned by him out of court before trial, avoided giving him particulars of the ease of which he had knowledge, and that Gauthreaux by this led affiant to believe that he was not favorable to the defense. The district court overruled the motion for a new trial.
As relates to the new trial prayed for by defendant:
[1] The purpose, wé have seen, was to examine Gauthreaux as a witness to the end of impeaching the testimony of Numa Boudreaux. It is laid down in jurisprudence that a new trial will not be granted to impeach the testimony of a witness. State v. Fahey, 35 La. Ann. 10.
[2] Besides, it should be made to appear in some way that the knowledge of affiant who makes application for a new trial was based upon facts not easily obtainable from the witness whose testimony it is proposed to introduce if the new trial be granted; and, furthermore, the witness might have been placed under oath during the trial, even though he was considered an unfavorable witness.
[3] There are well-defined rules to protect one who is taken by surprise and who seeks to commit a wrong by finessing as a witness. Thus we have in 29 Cyc. p. 198:
“Fear of unfavorable testimony is not good ground not to examine a. witness.”
[4] In one of the decisions of this court it was held, substantially, that a new trial will not be granted to examine a witness summoned who is dismissed without examination. Gauthreaux had received a summons. Wilbor v. McGillicuddy, 3 La. 382; Lowry, Curator, v. Erwin, 6 Rob. 212, 39 Am. Dec. 556; Hoffmeyer v. White, 2 La. Ann. 597; Burton v. Maltby, 18 La. 531; Linton v. Stanton, 4 La. Ann. 406.
In addition, it is singular that, although there was another workman near plaintiff (Joe Le Blanc), he was never examined, and no concern seems to have been shown on account of his absence. True, he had become a resident of another parish. His testimony might have been obtained.
[5] Again, the judge of the district court stated in his reasons for judgment “that no one except Frank, an Italian, was present besides the boy.” This, as we recall the testimony, is sustained except that Le Blanc was also near, and neither was examined as a witness.
*623 And, lastly, no particulars are given about the place at which the witness Gauthreaux was, or how it was that he had information which he chose to withhold, or when or how it was disclosed.
As relates to continuance, we will not reverse the ruling refusing to postpone the case to another day. The absent witness Mr. Shaw who had been summoned as defendant’s witness, should have been present and called upon during the trial. He was one of the stockholders of the defendant company and its superintendent; and it devolved upon him to be present to refute the averment of negligence on the part of the company. The court properly refused to postpone the case on account of his absence.
On the Merits.
[6] Having already worked at the swing saw, upon receiving orders to repair to that place, plaintiff assumed that he must work. He saw no other work for him to do than at the saw, at which he had worked for a short time a few days prior. The foreman of defendant had ordered him to go to that place. It was true that he adds that he said to plaintiff, “Wait until I come.” The last words plaintiff says he did not hear. These words add very little to the strength of the defense for the foreman did not follow up his orders. He must have forgotten that he ever gave such an order. There was negligence in this respect.
Plaintiff acted in accordance with natural impulses, seeking to serve his employer, i He had been told to go to the “head mill.” That order, when given to others, was understood that operating the saw by the one receiving it was meant. It was the only work to be done at the mill head. Plaintiff understood the order as others had.
There was another man at work near plaintiff, one Frank, before named, who took up the pieces that would be used in the conveyor and put them aside to be passed through the swing saw operated by plaintiff. Plaintiff at the saw would pile up the pieces sawed, and throw the trash in the conveyor. There was no great distance between the shingle mill, where the foreman was at the time he gave the order, and the “head mill,” as both were under the same roof, and the swing saw could be heard at some distance while running.
We have referred to the weight attached to this saw, and we have stated how the accident happened, and that plaintiff was standing before the saw when it struck him. There is some confusion in the explanation given of the movements of the saw and the motive of plaintiff’s son at the time the saw struck him. He evidently had his right arm extended from his body when the saw struck the inside of the arm, instead of the outside, as he had to reach to the right and to the left in performing his work. If the saw swung forward, as alleged, it was not extraordinary that it struck his arm as it did while it was extended out from his body. The theory of defendant that he was attempting to pass his arm in the rear of and around the saw to reach one of the pieces of timber is, to say the least, persuasive. From all indications the accident would not have happened if the rope had not broken.
[7] There is another ground. Usually there must be inspection of the machinery and appliances. The want of sufficient inspection gave rise to the complaint that the workman’s safety had not in this instance received sufficient attention. The saw and the rope seem to have been overlooked, and had not been inspected, and, according to the testimony, the rope was not a fit rope whereby to suspend a heavy weight.
After the accident, nothing was done to find out how it was that it happened, as no one repaired to the saw. Another workman was sent to operate the saw, and he found a broken rope, which he repaired before beginning the work. The day after the acei *625 dent, the foreman and two of the officers of defendant repaired to the place of the accident, and found everything in good order, for the very good reason that some time prior the young man who had been sent as just stated to operate the saw had repaired the rope and placed everything in condition for the work.
[8] On the day of the accident, the foreman took his dinner at the mill, and other workmen did likewise. He was about the place and did not think of plaintiff, for he must have passed the saw which was being operated. The material was being sawed and piled up or otherwise disposed of and still he saw nothing. He did not bother himself about what plaintiff was doing. A good captain looks after his soldiers. A good captain of industry likewise should not fail to follow up his instructions nor forget those sent to a place to work. Hands must be instructed, machinery left in order and properly inspected. Judging the cause by these tests, we find it impossible to reverse the judgment of the district court. The district judge allowed $2,500 damages, with interest. It is too moderate in amount. It will have to be increased to accord with the jurisprudence of this court. Five thousand dollars are allowed.
It is therefore ordered, adjudged, and decreed that the judgment of the district court is amended by increasing the amount to $6,000, with 5 per cent, interest on $5,000 from the date'mentioned in the amended decree. The defendant is also condemned to pay the costs of appeal.