This suit grew out of differences between plaintiff and defendant as regards the terms of a conditional lease of 731 feet of 8 inch iron pipe by the former to the latter. There is tendered a question of fact only. The trial judge resolved the issue against the defendant. This appeal is prosecuted by it.
Plaintiff alleged that on March 22, 1940, it leased the pipe to defendant at a monthly rental of $73.10, being 10¢ per foot per month, with the privilege of purchasing it at the end of thirty days for the price of $557.15, with credit for rent paid to that time; that defendant did not avail itself of the privilege of purchasing the pipe at the end of said period but continued to retain possession of same and to pay rent thereon at said rate for seven consecutive months, and thereafter discontinued such payments notwithstanding amicable demands therefor. Plaintiff sues for rent at the rate of $73.10 per month for eight months, being the time intervening between date of last rent payment and the date of filing suit. In addition, it prays that its ownership of the pipe be recognized and the right to sue for rent accruing subsequent to filing suit be reserved to it.
Defendant admits that it leased the pipe at $73.10 per month but alleges and contends that it was agreed that it might retain and use the same at that price so long as it wished, with the option at any time during the continuance of the lease, to purchase the pipe at the agreed price of $557.15, "with credit to be allowed on the purchase price for all monthly rentals paid." It further alleged that after deciding to purchase the pipe it continued to make rental payments therefor until seven had been made and at the end of the eighth month when there remained only $45.45 due on the price, a check therefor was mailed to plaintiff. Defendant prays that plaintiff's demand be rejected and it be recognized as owner of the pipe. *Page 78 
Plaintiff refused to accept the check for $45.45 as representing the balance due on the price of the pipe for the reason, as above set forth, that defendant had lost the privilege of purchasing the pipe on the terms to which originally agreed.
Plaintiff is a commercial partnership domiciled in the City of Alexandria, Louisiana, and deals in junk. It is composed of J.H. Fuhrer and H.E. Wellin. Defendant is a corporation engaged in the gravel business. Defendant desired to lease or purchase pipe of the quality and quantity involved herein and its manager, J. Howard Wilson, telephoned Mr. Fuhrer to ascertain if his company had such pipe on hand and on receiving an affirmative answer, he drove over to plaintiff's place of business where the contract was closed. The pipe was at that time delivered to J.B. Forsythe, an employee of defendant, and by him hauled away.
Mr. Fuhrer testified that when Wilson arrived he was on the yard and after an agreement had been reached between them, both went inside the office where the terms of the agreement were discussed with and submitted to Mr. Wellin, who, presumably, concurred therein. Fuhrer and Wellin in their testimony support the allegations of the petition with regard to the terms of the contract. They are corroborated by a negro employee named Amet DeSoto, who says he was near to the parties when the agreement was made and heard what was said by them.
Wilson testified in support of defendant's version of the contract. He says that when he reached plaintiff's yard, Fuhrer was in the office; that he went inside and talked with him and thereafter both came out on the yard to where the pipe was located, and that the agreement was then and there closed. He also testified that Wellin was not in the office at the time nor was he seen by him, Wilson. Forsythe, defendant's truck operator, says he heard Wilson and Fuhrer discussing the terms of the agreement and is positive that such terms were as defendant contends.
A strong circumstance favors plaintiff's contention that the privilege to buy the pipe and receive as credit on the price thereof rentals paid, expired at the end of thirty days. When this period expired Fuhrer called Wilson on the telephone and asked him if he had decided to purchase the pipe. Wilson testified that: "* * * Told him at that time we had not, that we would still continue to pay the rental, and if we kept it long enough it would be ours, and if we didn't we would return the pipe * * *".
There is some material variance between the parties as to what each said in this conversation. Fuhrer's testimony on the subject is as follows: "* * * I said, `Mr. Wilson, the thirty days are up; do you now want to buy the pipe?' and he said, `Well, I may need the pipe for a little while longer', and I said, `How much longer will you need it?'. I had a sale then for the pipe; * * * I told him the `Alexandria Sand Gravel Company wants to buy the pipe and if you are not going to use it any longer, I would like to have it', and he said, `No, Jack, I am going to use the pipe another thirty or sixty days longer.' I then presumed that he wanted to continue with the original agreement and rent the pipe, otherwise I would never have sold the pipe under those conditions, because I could have gotten cash for the pipe at that time."
Unless the privilege to buy was limited to thirty days, there would appear no good reason for Fuhrer calling Wilson and discussing the matter as was done. If defendant had the right to use the pipe so long as it desired, on payment of the monthly rent, as by it alleged, it would seem queer that Fuhrer would make inquiry concerning defendant's attitude toward purchasing at the end of the thirty day period.
Each party asserts that a contract of the character alleged upon by the other would be highly unbusiness-like and under no circumstances would be subscribed to by either, respectively. Defendant emphasizes the fact that at the rate of $73.10 per month the rentals for eight months would exceed the price at which the pipe could have been purchased. This being true, it argues, why would it be willing to pay this amount and/or more and yet not acquire the pipe's ownership? This argument is forceful and logical but contracts freely entered into become the law between the contractants. Drastic or unreasonable features thereof are enforcible unless contrary to law, good morals or public policy.
On the other hand it would be most unusual and seemingly unbusiness-like for plaintiff to have consented to sell the pipe on the terms defendant alleges without any stipulation for interest on the deferred *Page 79 
payments in the event defendant decided to purchase.
Defendant moved for new trial and to support its alleged right thereto, attacked the credibility of the witness, Amet DeSoto, on the ground that he is of bad moral character and unworthy of belief. Supporting these charges, it is alleged that said DeSoto had been charged with and convicted of larceny in the District Court of Rapides Parish; that another charge of like character is now pending against him; that he has also been charged with numerous other offenses involving moral turpitude. Copies of bills of information covering the larceny charges were attached to the motion, which is urged here.
The lower court evidently reached the conclusion that even though the criminal record of DeSoto was as alleged, this fact would not alter its conclusion on the factual question tendered because the motion was overruled.
At the time of trial, DeSoto was not in plaintiff's employment. He was working at Leesville, Louisiana, some distance from Alexandria. Therefore, no good reason appears for him to color his testimony in plaintiff's behalf.
It is a well-settled rule of evidence that simply because a witness is charged with or has been convicted of crime, he is not necessarily unworthy of belief. The existence of such facts might in some instances affect his credibility. But if there is testimony of witnesses whose credibility has not to any extent been impeached, of the same character as that given by the assailed witness, his testimony, thus bolstered, should be given due weight and credit.
It was held in Doiron v. Baker-Wakefield Cypress Co., Ltd.,131 La. 618, 59 So. 1010, that:
"It is well settled that a new trial will not be granted to permit the introducing of evidence tending to impeach a witness.
"Before a new trial can be granted, it must be shown that the evidence which forms the basis of the application could not have been obtained in the former trial after reasonably diligent efforts."
The criminal record of DeSoto is reflected from the official records of Rapides Parish. No valid excuse is assigned for defendant not acquiring knowledge thereof prior to the trial of the case. In this respect, due diligence is lacking.
Motions for new trial address themselves to the sound discretion of the trial judge. His action thereon will not be disturbed unless it clearly appears that he has abused his discretion. No such abuse is present here. No manifest error appears in the judgment appealed from. It is affirmed with costs.
 On Rehearing