(96 South. 57)
MALLOY v. STATE. (8 Div. 494.)

(Supreme Court of Alabama. April 12, 1923.)

1. Indictment and information ⬅—37—Indictment in Code form held sufficient.

An indictment for rape, which followed Code 1907, § 7161, form No. 88, is, under section 7132, good as against demurrer.

2. Criminal law ⬅—134(1)—Burden on applicant for change of venue to show impartial trial and unbiased verdict cannot be expected in county of indictment.

When defendant applies for a change of venue, .the burden rests on him to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected in that county, where the indictment was found.

3. Criminal law ⬅—1144(6)—Presumption in favor of court's ruling on change of venue not binding on appeal.

⬧ When application for change of venue is refused, on appeal the application and evidence must be reviewed and revised, without any presumption in favor ·of the ruling of the lower court thereon. Code 1907, § 7851, as amended by Gen. Acts Sp. Sess. 1909, p. 212.

4. Criminal law ⬅—134(1)—On change of venue motion,· refusing in evidence newspaper article as alleged offense not error.

On change of venue motion, where there was no evidence indicating that a newspaper article could or did have any influence on public opinion in the county of trial, there was no error in refusing a copy of the paper in evidence.

5. Criminal law ⬅—134(1)—On change of venue motion, sustaining objection to question whether case had been tried on streets not error.

On change of venue motion, where the court permitted defendant's witness to prove that the case had been discussed in his presence on the streets, there was no error in sustaining an objection to the question whether the case had not been tried many times on the streets everywhere in the town, and if, since the thing happened, it has not been the controlling topic of conversation.

6. Criminal law ⬅—134(1)—Refusing to answer question calling for opinion on motion for change of venue not error.

On motion for change of venue, refusing to permit defendant's witness to ·answer a question as to whether he reflected the public sentiment of the people of the county and the town under the headlines of his paper, without having consulted as many as a dozen people of the county, was not error, as the question called for an opinion and conclusion.

7. Criminal law ⬅—134(4)—Burden of proof on motion for change of venue not met.

In application for a change of venue in a rape trial, evidence held not· to show that defendant could not reasonably expect an impartial trial and an unbiased verdict in the county of indictment at the time the application for change of venue was made and heard.

8. Rape ⬅—43(2)—Condition of genital organs after offense relevant inquiry.

In a rape prosecution, the condition of the genital or external organs of prosecutrix after the offense is a relevant inquiry.

----

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Rape ☞43(2)—Signs of injury on prosecutrix's person may be shown.**

In a rape prosecution, signs of injury on the person of the prosecutrix can be shown.

**10. Rape ☞43(2)—Witness' statements as to prosecutrix's condition immediately after offense held to bear on material issue.**

In a rape prosecution, where the offense was alleged to have been committed a short time before prosecutrix was brought to witness' house, statements of witness as to condition of her clothing as to its being torn, and of the person of the girl as to bruises, were properly admitted.

**11. Rape ☞43(2)—Statements of physician as to prosecutrix's illness with fever for several days after offense held to bear on material issue.**

In a rape prosecution, statements by a physician that prosecutrix was in bed with fever for several days after the alleged offense were admissible, as tending to prove or disprove whether the girl was forcibly ravished.

**12. Witnesses ☞268(8)—Cross-examination of prosecutrix as to number of times she "holloed" not error.**

In a rape prosecution, where prosecutrix testified that, when defendant attempted to ravsh her, she holloed and kept holloing, the refusal to require her on cross-examination to state whether one time, or five, ten, or twenty times, was not error.

**13. Rape ☞38(1)—Evidence of defendant's companion as to whisky incident held not material.**

Where the offense of rape was alleged to have taken place about 2 a. m., refusal of evidence of defendant's companion as to what was said at the time whisky was offered to prosecutrix, about 9 p. m. the night before, was not error; the question calling for a matter immaterial to the issue. .

**14. Criminal law ☞448(3)—Excluding witness' conclusions as to reason for automobile trip not error.**

In a rape prosecution, where the offense was alleged to have been committed after the return from an automobile trip, exclusion of testimony of witness that the parties had gone to another town, and that they were supposed to go to church over here, was proper, as the evidence was a statement of a conclusion not bearing on the issue.

**15. Witnesses ☞277(2)—Cross-examination of defendant as to statements alleged to have been made the next morning held legitimate inquiry.**

In a rape prosecution, it was legitimate inquiry to ask defendant on cross-examination if S., the next morning, told him that he was charged with rape.

**16. Witnesses ☞379(2)—Evidence held admissible as tending to impeach witness on pertinent matter.**

In a rape prosecution, where defendant's witness was asked if he did not tell A., on the night of the alleged offense, that he had been out all night with a boy that had a girl that had been crying all night, which statement was denied, it was not error to permit A. to testify that he saw witness about 2 o'clock in the morning after the alleged offense, and that witness made such statement to him, as such evidence tended to impeach witness' testimony on a pertinent matter; proper predicate having been laid therefor.

**17. Criminal law ☞1044—Mere objection to alleged improper argument presents nothing for review.**

A mere objection to argument and exception to the court's ruling thereon, without a motion to exclude it from the jury, presents nothing for review.

**18. Criminal law ☞722(3)—State attorney's argument that defendant was felon under his own testimony held justified. '**

In a rape prosecution, where defendant had testified as to an attempt to commit the offense, there was no error in the argument of the state's counsel that defendant had offered many witnesses to prove he had a good character, but that under the evidence and his own statement he is a felon under the law, it being legitimate argument and justified by the evidence.

**19. Criminal law ☞829(1)—Refusal of charges, covered by charges given, not error.**

Where the rules of law embodied in a request to charge were substantially and fairly given in the court's oral charge, there was, in view of Code 1907, § 5364, as amended by Gen. Acts 1915, p. 815, no error.

Appeal from Circuit Court, Limestone County; Osceola Kyle, Judge.

Russell Malloy was convicted of rape, and he appeals. Affirmed.

Gibson & Davis, of Birmingham, for appellant.

The ruling of the trial court on the motion for a change of venue is without presumption in favor of its correctness. Acts 1909, p. 212; Godau v. State, 179 Ala. 27, 60 South. 908. The fact that the trial judge ordered the defendant transferred to another county prior to the trial was a circumstance showing the feeling in the county where the offense was alleged to have been committed. Thompson v. State, 117 Ala. 67, 23 South. 676; Seams v. State, 84 Ala. 410, 4 South. 521; Neville v. State, 118 Ala. 657, 23 South. 1006. Counsel argue for error in the admission and rejection of evidence, but without citation of authorities.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Evidence as to the condition of the clothing and person of the injured party was properly admitted. 4 Mich. Ala. Dig. 171. Likewise as to such condition subsequent to the crime. 8 Mich. Ala. Dig. 245. No motion to exclude objectionable argument being.

made, there is nothing presented for review. Boyette v. State, 18 Ala. App. 363, 92 South. 515; Lambert v. State, 208 Ala. 42, 93 South. 708.

MILLER, J. The defendant, Russell Malloy, was indicted, tried, and convicted of rape; his punishment being fixed at 25 years in the penitentiary.

[1] The indictment literally follows the form No. 88 provided by section 7161 of the Code of 1907 for the offense charged. This was sufficient, and the court did not err in overruling the demurrer to it. Section 7132, Code 1907.

There was an application by the defendant for a change of venue, setting forth the reasons why he could not have a fair and impartial trial in that county in which the indictment was found, which was sworn to by the defendant. It was refused by the court on the hearing.

[2, 3] When the defendant makes application for a change of venue, the burden rests on him to show "to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected" in that county where the indictment was found. Seams v. State, 84 Ala. 410, 4 South. 521. When the application is refused, and it is presented to this court on appeal, the application and the evidence offered in the trial court must be reviewed and revised, and this court will reverse and remand, or render such judgment on the application as it may deem right, without any presumption in favor of the judgment or ruling of the lower court thereon. Section 7851, Code 1907, as amended by Gen. Acts Sp. Sess. 1909, p. 212; Godau v. State, 179 Ala. 38, 60 South. 908.

[4] On the hearing the defendant offered in evidence a copy of the Florence Daily News, which contained an article on the alleged offense. There was no evidence offered to show this paper was circulated or had any subscribers in the county where the indictment was found. The court informed the defendant, if that paper had any circulation in Limestone county, that the article would be admitted in evidence. The defendant declined to make such proof, and the court sustained objection of the state to the introduction of the paper containing the article. The defendant cannot complain at this ruling, as there is no evidence indicating in any way how the article could or did have any influence on public opinion in the case in the county.

[5, 6] The court would not permit the defendant to ask a witness if the case had not been tried many times on the streets, everywhere in the town; "ever since this thing happened, hasn't it been the controlling topic of conversation." But the court permitted him to prove it was discussed in his presence on the streets. In this the court did not err. The witness stated he could not say how much it had been discussed, and said:

"I don't presume there has been a dozen men on the streets spoken to me about this case."

This was a witness of defendant, and the court would not permit him to be asked the following question:

"Do you mean that you reflected the public sentiment of the people of this county and this town under the headlines in your paper, without having consulted as many as a dozen people in the county?"

In this the court was correct, as the question called for an opinion, a conclusion, and no facts.

[7] We have read carefully the application, the newspaper articles, the oral evidence, and the affidavits of witnesses introduced in support of and against the application, and we are not reasonably satisfied from this evidence that the defendant could not reasonably expect an impartial trial and an unbiased verdict by a jury in that county at the time the application for the change of venue was made and heard by the lower court. The defendant failed to meet the burden of proof placed on him by the statute, and it becomes our duty to affirm the ruling of the trial court in refusing to grant the application for a change of venue, a discussion of the testimony is unnecessary, and the statute does not require it to be expressed in this opinion. Godau v. State, 179 Ala. 27, 60 South. 908; Adams v. State, 181 Ala. 58, 61 South. 352.

The defendant pleaded not guilty, and not guilty by reason of insanity, to the indictment, but afterwards withdrew the plea of not guilty by reason of insanity.

[8, 9] Dr. King, who examined the person of the girl found two bruises on her neck, one a little larger than a silver dollar, the other not so large, one on the right and the other on the left of the neck; there was a mark across her back; one wrist was inflamed and swollen. Upon an examination of her person he found a tear about a quarter of an inch long in the fourchette, and the lower part of the vulva torn; her genital organs were congested or reddened and swollen. The court permitted the solicitor, over defendant's objection, to ask the witness the following question:

"State whether or not it had the appearance of being bruised; you say it was reddened and swollen?"

He answered:

"It was red and swollen. I could not say that it had been bruised, because there was no black, bloodshot places. The tear was in the lower part of the vulva."

In this the court committed no error. On a trial of a person for rape, the condition of the genital or external organs of the woman,

after the alleged offense, is relevant and competent. It is a material inquiry. This offense was alleged to have been committed about 1 or 2 o'clock in the morning, and this examination of the girl by this physician was about 3 or 4 o'clock in the afternoon of the same day; complaint by her thereof being made immediately after the alleged offense was committed. The signs of injury on the person of the girl can be shown. Scott v. State, 48 Ala. 420.

[10] The girl lived in Florence, and while in Athens attending an Epworth League meeting she was stopping in a private home. She left the home at 5 o'clock in the afternoon to go to the college, and returned at 2 o'clock in the morning. She was between 15 and 16 years of age. The lady in whose home she was stopping testified that, when she came into the house, she exclaimed: " 'Oh, Mrs. Chambers!' and fell into her arms as if she had fainted." This was about 2 o'clock at night. The offense was alleged to have been committed a short time before she was brought there in an automobile. This witness was allowed by the court to testify as to the condition of the clothing, as to being torn, and the person of the girl as to bruises. This testimony was properly admitted by the court over the objection of the defendant. Her testimony was similar in many respects as to the personal bruises on the girl as that testified to by the physician.

[11] The physicians were properly permitted to state the girl was in bed for several days afterwards with fever. All such evidence tends to prove or disprove a material inquiry or issue in the case—whether the girl was forcibly ravished. Scott v. State, 48 Ala. 420; Rollings v. State, 160 Ala. 82, headnote 5, 49 South. 329; Whitaker v. State, 106 Ala. 30, 17 South. 456; 4 Michie, Dig. 171, § 249 (1), (2), (4).

[12] The girl testified that, when defendant attempted to and did ravish her, "she holloed, kept holloing; would not say how many times as she did not remember." The court did not err in refusing to make the witness answer the question of defendant "whether one time; five, ten times, or twenty times," as the witness had stated she did not remember and had given testimony covering that question.

[13] About 9 o'clock that night the defendant and Oakley Kennemer had taken the girl from Athens to Albany in an automobile. Kennemer bought some whisky. He testified he offered her some whisky and that she would not drink. The defendant asked witness the following question:

"Do you remember just about what was said about this whisky? You said you offered her a drink. Do you remember about what was said?"

The state objected, and the court overruled the objection and stated to defendant's counsel:

"That he would permit him to show by the witness whether the girl was invited to drink there."

This question called for immaterial matter to the issue, it shed no light on it, and it was several hours before the alleged offense was committed. What was said about the whisky would neither tend to prove nor disprove the offense charged.

[14] One witness testified "they were supposed to go to church over there." This, on motion of the state, was excluded from the jury by the court. It had no bearing on the issue, and was a statement of a conclusion of the witness.

[15] The defendant was examined as a witness in his own behalf. The state asked him on cross-examination if Mr. Sarver the next morning told him that he was charged with raping the girl, and he replied:

"Yes, sir," and "I told him I was not guilty; I resented it, of course; any man would resent a thing like that."

This was a legitimate question on cross-examination of the defendant.

[16] Oakley Kennemer, witness for the defendant, was asked by the state on cross-examination "if he did not tell Willie Adkins that night, as he went by the depot, that he, had been out all night with a boy that had a girl that had been crying all night;" and he said "he had no such conversation and made no such statement." He had testified that he was with defendant and the girl in the car; she did not cry, and he heard no complaints, etc., from her that night. The court did not err in permitting Willie Adkins to testify:

"That he saw Oakley Kennemer about 2 o'clock in the morning of the 12th of June, and Kennemer told him that he had been out with a fool fellow with a girl crying all night, and never had such a night in his life, or words of that effect."

This tended to impeach Kennemer's testimony on a matter pertinent to the issue; proper predicate had been laid for it when he was on the stand, and he denied it. It was matter material to the issue. The girl testified the car, after they returned to Athens, or were near Athens, was stopped, Kennemer left it for a few minutes, and while he was gone the defendant forcibly ravished her, and when Kennemer returned she was crying. There was evidence by the defendant that, while Kennemer was gone, he, with consent, expressed or implied, from the girl, attempted to have sexual intercourse with her, but was prevented from so doing by Kennemer returning to the car, and

that she did not cry or complain. Kennemer was jointly indicted for this offense with this defendant, but they were tried separately. Rosenbaum v. State, 33 Ala. 354; Bivens v. Brown, 37 Ala. 422.

[17] The defendant bases many errors assigned on the court's ruling in overruling objections to argument of solicitor to the jury. These were objections to arguments of the solicitor, and they were overruled by the court, and the exception was reserved by the defendant. There should have been a motion to exclude it from the jury, as mere objection to the argument is not sufficient. The arguments had been made, no motion was made to exclude it, and mere objection to words already spoken and exception to overruling the objection presents nothing for this court to review. Lambert v. State (Ala. Sup.) 208 Ala. 42, 93 South. 709, headnote 8; Sharp v. State, 193 Ala. 22, headnote 5, 69 South. 122.

[18] We find where defendant states to the court:

"He [attorney for the state] states that he is a felon under his own testimony; we ask that it be excluded."

The solicitor for the state in his argument said:

"That the defendant had offered many witnesses to prove that the defendant had a good character, but that under the evidence and the defendant's own statement he is a felon under the law," etc.

This was a legitimate argument under the evidence, and within proper bounds, justified by the evidence, and the court did not err in refusing to exclude this part of the argument, "He is a felon under his own testimony," as requested by the defendant.

The oral charge of the court was clear and comprehensive on rape, assault with intent to rape, assault and battery, reasonable doubt, good character of defendant, the impeachment of witnesses, and the credibility of witnesses. Twenty written charges requested by the defendant were given by the court to the jury. The oral charge of the court and these 20 written charges given the jury at defendant's request cover every principle of law applicable to this case.

[19] There were 19 written charges, requested by the defendant, which were refused by the court. Many of these refused charges gave a correct statement of the law; but in each instance where any refused charge stated the law correctly, as applicable to this case and the evidence in this case, we find that the same rule of law was substantially and fairly given to the jury in the court's oral charge, or in the written charges given at the request of the defendant. We have examined carefully each of these refused charges, and no reversible er-

ror can be predicated on the refusal to give any one of them, and a separate discussion and analysis of them in this opinion will be of no benefit. Section 5364, Code 1907, as amended Gen. Acts 1915, p. 815; Whitehead v. State, 206 Ala. 288, headnote 7, 90 South. 351.

We find no reversible error in the record, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.