PITTS v. STATE. (2 Div. 272.)

(Court of Appeals of Alabama. June 30, 1923. Rehearing Denied July 14, 1923. Affirmed on Mandate of Supreme Court Feb. 5, 1924.)

Rape ⬅49(2)—Failure to make outcry admissible.

In a rape case, a failure of the assaulted party to make complaint recently after the occurrence, opportunity offering itself, is admissible as casting a suspicion on the bona fides of the charge.

Foster, J., dissenting.

Appeal from Circuit Court, Bibb County; S. F. Hobbs, Judge.

Ed Pitts was convicted of rape, and appeals. Affirmed on mandate of Supreme Court in Ex parte State ex rel. Atty. Gen. (Pitts v. State), 210 Ala. 662, 99 South. 65.

Jerome T. Fuller, of Centreville, for appellant.

---

A general objection to evidence, illegal and irrelevant on its face, is sufficient. McClellan v. State, 117 Ala. 144, 23 South. 653; 1 Mayfield's Dig. 341; Rose v. State, 4 Ala. App. 163, 58 South. 680; 1 Brickell's Dig. 887; Poarch v. State, ante, p. 161, 95 South. 781; McAlpine v. State, 117 Ala. 93, 23 South. 130. A question calling for the opinion of a nonexpert witness is objectionable. 16 C. J. 748; Dumas v. State, 159 Ala. 42, 49 South. 224, 133 Am. St. Rep. 17; McKee v. State, 82 Ala. 32, 2 South. 451

Harwell G. Davis, Atty. Gen., Lamar Field, Asst. Atty. Gen., and Joseph H. James, of Greensboro, for the State.

Each conspirator is guilty of all deeds directly and naturally resulting from the common purpose. 1 Mayfield's Dig. 6; Pierson v. State, 99 Ala. 148, 13 South. 550. A conspiracy may be proven by circumstances, and whether it exists is a question for the jury. Marler v. State, 68 Ala. 580; Morris v. State, 17 Ala. App. 126, 82 South. 574; The question involved is decided in the case of Cole v. State, ante, p. 360, 97 South. 891.

SAMFORD, J. The state, on the examination of S. A. Lee, the father of the girl alleged to have been raped, was examined fully and at great length touching the girl's leaving home and his search for her at various places, lasting through several days, and finally of finding her. He then testified as to her physical condition and personal appearance at the time he found her. Witness was permitted to testify, in answer to questions propounded by solicitor, and over the objection of defendant: "That she was not then in a normal state;" that from the place they found her they "had to almost carry her to the car." In answer to a question as to whether she went willingly, he answered, "She didn't seem to realize anything about it; she did not seem to know anything about it." He further testified that she was in good health before she left home. Under ordinary circumstances this testimony might have been admissible. Jacobs v State, 146 Ala. 103, 42 South. 70. In the Jacobs Case it was held that a witness was competent to testify as to the condition in which prosecutor was found shortly after the assault, though the witness was not an expert. In May v. State, 167 Ala. 36, 52 South. 602, it was held that at the time of the fatal difficulty deceased "looked like a drunken man"; in Burton v. State, 107 Ala. 108, 18 South. 284, that defendant "looked paler than usual"; in Houston's Case, 78 Ala. 576, 56 Am. Rep. 59, that he, "looked excited"; in Thornton v. State, 113 Ala. 43, 21 South. 356, 59 Am. St. Rep. 97, "that he looked frightened when he saw me"; and in Sharp v. State, 193 Ala. 22, 69 South. 122, "that defendant did not appear drunk." These are held not to be conclusions merely, but short-hand renditions of facts such as are recognized in Dobbins v. State, 15 Ala. App. 166, 72 South. 692.

But, the pertinent inquiry is, Was this testimony admissible as against this defendant? The testimony of the physician who examined the girl after she returned to her home, and who testified in behalf of the state, showed no lacerations of the parts, but an excited and irritated condition, due to excessive intercourse. The testimony developed from the state's witnesses, and principally from the prosecutrix, tended to prove that once before the present escapade the girl had left home, for what purpose is only inferential; that on Sunday afternoon before this alleged rape the prosecutrix had again voluntarily left her home with a young man Frazier, whom she claims had promised to marry her. According to the girl's testimony, she and Frazier met at a pavilion; that Frazier told her he had a license; that he further told her he had a car, but the car was not at the place he said and they left together walking to Hargrove, where Frazier left her in a field; by this time it was dark. He was gone a good while, during which time the defendant came to the field where she was; that defendant then lived at Hargrove, but had formerly lived at Smith Hill, her home, where she knew him; that she and defendant went down the path into the woods to a house; that she told defendant she wanted a drink of water; that defendant was carrying her to the house to get the water; that it was "just a little old house in the woods, and nobody lived in it." From the house they went back in the woods, and defendant "insulted me, and hit me, and had sexual intercourse with me. He knocked me down, and after he knocked me down he made me do as he said." She further testified that it was without her consent, and against her will. After he had finished he took prosecutrix back, and left her on the side of the road, saying he was going for his gun, and to see if Frazier was there. Shortly thereafter defendant came back with Frazier, and she and they started in a buggy to Piper, where Frazier lived. The boy who was driving the buggy "got scared," and wouldn't go to Piper, and defendant suggested they go to Belle Ellen, to the house of a woman of bad repute, named Reach. At that time Dewey Pitts, a brother of defendant, came up, got into the buggy with prosecutrix and Frazier, and defendant left them. According to the testimony, the defendant saw prosecutrix no more during the following days of a most unusual experience. She made no complaint or outcry to Frazier, or Dewey Pitts, or to the Reach woman, of any ill treatment on the part of defendant towards her, but got in the buggy and went on to the Reach woman with Dewey Pitts and Frazier, arriving there at 1 a. m., where she stayed until Tuesday night. During the

time she was at the Reach woman's house she talked with her about her desire to marry Frazier, gave no indication of having been injured, and made no complaint as to having been mistreated. Tuesday night Dewey Pitts came for her, and told her that Frazier was waiting for her in a car on top of the hill; that they were going to Birmingham to get married. They did not find Frazier with the car, and prosecutrix and Dewey Pitts walked the railroad to Coleanor, leaving Belle Ellen about 8 p. m. On the way Dewey raped prosecutrix. They went on and met Frazier just as they reached Coleanor. With Frazier was Irby and a negro named Smithey. Prosecutrix made no complaint then of any outrage having been committed on her. Prosecutrix was then left with Dewey Pitts while the others went for a man named Joe Holder, who had a car; they all got in the car, and started for Birmingham. They did not go to Birmingham, but went to a place where they could get some whisky. Prosecutrix was then left with Holder while the others went for whisky, and while they were gone Holder raped her. When the others returned, among them being the man she claimed was going to marry her, she made no outcry or complaint. Upon the return, each of the party, except Irby, raped her. She then, according to her statement, was given some whisky, from the effects of which she went to sleep, and when she awakened she was at Holder's house with Frazier and Holder; later in the afternoon she left, going with the negro Smithey, and was accosted by an officer, who asked her name; she gave the name of Lena Wilson, and when he told her to come with him she ran, and in running came upon her father and another, who were looking for her, whereupon she fell down, and was carried home by her father. All of the foregoing experiences had happened to prosecutrix after she claimed to have been raped by defendant, without any effort on her part to escape or to make her condition known, or to make outcry or complaint, although she was, most of the time, in the midst of a thickly settled community, and much of the time she was left entirely alone.

The crime of rape, heinous in its conception, and damnable in its execution, is an assault upon the very source of virtue, and when committed on a chaste woman, inspires, in outraged womanhood, the desire to make immediate outcry for redress to those to whom she would naturally look for protection. In recognition of this, it has become the settled law of this state, in corroboration of the statement of the assaulted party's testimony that she made complaint of the assault while it was recent is relevant and admissible. 11 Mitchie's Dig. 477, par. 34(1). Recognizing also the character of the crime, that it is easy to make the charge, hard to prove it, and when proven harder to dis-prove, the contrary of the foregoing rule is recognized, to this extent at least. A failure of the assaulted party to make complaint recently after the occurrence, opportunity offering itself, will cast a suspicion on the bona fides of the charge. 1 Wharton Crim. Law, par. 724, note 7.

And so, in considering all evidence in a prosecution for rape, where the minds of the average jury can be so easily influenced at the harrowing details of the violation of a helpless woman, it is necessary to be cautious in the admission of testimony lest a verdict returned be based on something other than legal testimony. By reason of the nature of the charge, usually the evidence relied on for conviction must depend almost entirely upon the testimony of the prosecutrix and corroboration thereof.

The defense can only rely upon his denial and the impeachment of the woman's statement. Therefore any testimony admitted, which tends to enhance the horrible details of the crime, and to arouse the sympathy or the jury for the woman, which does not connect or tend to connect the defendant with the crime or is so remote as to have no legal probative force, could not fail to injure his defense before the jury.

It is not the law, says Mr. Greenleaf in his work on Evidence, vol. 1, p. 36, which furnishes the test of relevancy, but logic.

"Probative value, or capability of supporting an inference, is a matter of reasoning, and must be the same in a courtroom as in a laboratory; it is only the subject-matter that differs. Whatever rules of relevancy are found in our precedents are mere application of logic by the court."

If therefore it appear that a chaste female is violated on Sunday night, and without intervening cause, an examination on the following Friday discovers the parts to be lacerated and inflamed, a proper deduction could be drawn that the one was the result of the other. But where intercourse with defendant is shown to have occurred early Sunday night, and it appears that the female had had frequent and repeated intercourse with men disconnected from this defendant on Tuesday and Tuesday night, under the conditions recited in this case, and the examination on the following Friday discovers her to be suffering, not from lacerations, but from excessive intercourse with men, the fact that, when she was run down and caught by her father and his friends late Wednesday afternoon, "she was not normal," and "she did not seem to know anything about it," (referring to her being taken home), and "she was in good health prior to her leaving home," is too remote and disconnected from the act of defendant to be of any probative force and is irrelevant. The foregoing are at best but collateral facts, and to render them relevant there must be some natural, necessary, or logical connection between them and the in-

ference or the result which they are designed to establish. Commonwealth v. Jeffries, 7 Allen (Mass.) 548, 83 Am. Dec. 712. We know, as a physiological fact, that an isolated act of intercourse between a man and a normal woman would not produce the conditions testified to, and, when the intervening acts, disconnected from defendant's act, disclose the cause, it but emphasizes lack of probative force of the testimony admitted over defendant's objection, and, as was said by Mr. Bigelow, C. J., in Commonwealth v. Jeffries, supra:

"The conclusion in such cases is too remote and uncertain a deduction to be legitimately drawn from the premises."

The evidence above pointed out should have been excluded, and for this error the judgment is reversed, and the cause is remanded.

Reversed and remanded.

FOSTER, J. (dissenting). On a prosecution for rape the condition of the genital organs of the woman after the alleged offense is a material inquiry, and evidence is competent to prove whatever signs of injury she showed. Such evidence tends to prove or disprove a material inquiry in the case—whether the woman was forcibly ravished. Malloy v. State, 209 Ala. 219, 96 South. 57; Scott v. State, 48 Ala. 420.

The prosecutrix testified positively that the defendant had intercourse with her by force and against her will. The evidence tended to show that the act of the defendant contributed to her physical injury and condition, although there was evidence that other men also ravished her two days after the time she said defendant had connection with her. It was not necessary for the state to show what part of the woman's injury was due to the act of the defendant. Nor did the fact that other men ravished her two days later and that the physical examination was made a few days thereafter render immaterial or irrelevant the evidence of her physical condition. The evidence was properly admitted.

Although the woman's account of the transaction may appear strange and unreasonable, the probative force of the evidence was a question for the jury. I am of the opinion that the judgment of the lower court should be affirmed. I respectfully dissent from the opinion of the majority of the court.

PER CURIAM. Rehearing denied.

FOSTER, J. (dissenting). A careful reading of the evidence fails to disclose any objection taken or exception reserved to any part of the evidence properly presenting a question for review by this court. There was no objection taken to any portion of the

testimony of Dr. A. W. Trigg, the physician who made the physical examination of Eula May Lee, the girl alleged to have been ravished, and who testified to her physical condition on the Wednesday night and several days thereafter following the Sunday night the defendant was alleged to have committed the crime. Mrs. Samps Lee, the mother of the girl, also testified to her physical condition. No objection was interposed to any portion of her testimony. No objection was interposed to any portion of the testimony of Eula May Lee, who testified to the details of her harrowing experience from the Sunday night on which she said the defendant ravished her until after her return home the following Wednesday. She also testified to her physical condition before and after the alleged commission of the crime.

S. A. Lee, the father of the girl, testified without objection to the efforts he and others made to find the girl from Sunday until Wednesday afternoon, and, after testifying that when he found her "she was in bad shape, her hair was all rumpled up, wet and dirty, her clothes were torn, her shoes were ripped, all muddled and burst; we had to carry her to the car," the solicitor for the state asked, "State whether or not she was in normal state," counsel for defendant made a general objection to the question, the court overruled the objection, and the defendant excepted to the ruling of the court. The witness answered, "She was not." Counsel for defendant moved the court to exclude the answer without specifying any grounds therefor. The court refused the motion, and the defendant excepted.

The solicitor asked the witness to state whether or not Eula May Lee resisted or went willingly, and the witness answered:

"She did not seem to realize anything about it. She did not seem to know anything about it."

Counsel for defendant moved to exclude the answer without specifying any grounds. The court overruled the motion, and defendant excepted. No objection was made to the question.

The solicitor asked, "What was her physical condition prior to the time she left Blocton on that Sunday afternoon?" The defendant interposed a general objection, and the court overruled the objection. The witness answered, "She was in good health." No motion was made to exclude the answer.

Mrs. S. A. Lee, the mother of the girl, being recalled, testified:

"I stayed with my daughter after she was brought back from Piper. She remained in bed about three weeks. She was not able to sit up any at all. * * * During that time I observed her private parts were very badly torn indeed. She had a bloody discharge at the time the doctor examined her."

No objection was interposed to any portion of the testimony of Mrs. Lee. Every objection interposed by defendant to any portion of the testimony of any witness throughout the trial is set out above. There was not a single instance in which any ground of objection was specified. There is not a single objection which can avail the defendant under the well-settled rules laid down by both the Supreme Court and this court in numerous cases.

Where the evidence elicited is not patently and palpably illegal, a general objection presents no question for review in the appellate court, as there must be special objection pointing out the grounds of irrelevancy or illegality. Washington v. State, 106 Ala. 58, 17 South. 546; Gunter v. State, 111 Ala. 23, 20 South. 632, 56 Am. St. Rep. 17; Nickerson v. State, 6 Ala. App. 27, 60 South. 446; Key v. State, 4 Ala. App. 76, 58 South. 946; McClellan v. State, 117 Ala. 140, 23 South. 653; Thomas v. State, 139 Ala. 80, 36 South. 734; Waters v. State, 117 Ala. 108, 22 South. 490; Linnehan v, State, 120 Ala. 293, 25 South. 6; Brooks v. State, 146 Ala. 153, 41 South. 156; English v. State, 14 Ala. App. 636, 72 South. 292.

It cannot be said, that the testimony was patently illegal. Myers v. State, 84 Ala. 11, 4 South. 291.

On a prosecution for rape, evidence of the condition of the genital organs of the woman after the alleged offense is a material inquiry, and evidence is competent to prove whatever signs of injury she showed. Such evidence tends to prove or disprove a material inquiry in the case whether the woman was forcibly ravished. Malloy v. State, 209 Ala. 219, 96 South. 57; Cole v. State, ante, p. 360, 97 South. 891.

Physicians may testify to the physical condition of the woman upon examination made after the crime was committed, but the remoteness of such examination affects its probative force.

In Myers v. State, 84 Ala. 11, 4 South. 291, the examination was made ten days after the crime was alleged to have been committed, and the court held that this evidence was not per se irrelevant; that it may have tended to prove penetration, a material ingredient in the crime of rape. 33 Cyc. 1471.

Testimony of a physician that he had examined the prosecuting witness, an, unmarried woman, in a prosecution for rape, more than four weeks after the alleged crime, that he then found her hymen ruptured or penetrated, is admissible against the accused. Lyles v. United States, 20 App. D. C. 559.

The prosecutrix testified positively that the defendant had intercourse with her by force and against her will. Evidence of her physical condition three or four days after the alleged crime was admissible, although there was evidence that other men ravished her two days after the time she said defendant had connection with her. The evidence tended to show that the act of the defendant contributed to her physical injury and condition, as well as penetration, a necessary element of rape. It was not necessary for the state to show what part of the woman's injury was due to the act of the defendant. Can it be the law of this state that evidence of the physical condition of the woman may not be admitted against the first man who ravishes her, simply because three others ravished her two days later, and the physical examination was made one or two days thereafter, and as soon as the unfortunate victim could be rescued from her ravishers? I think not. There is no reason or logic for such law, and the cases cited by the learned judge delivering the majority opinion in this case do not in my opinion sustain the conclusion reached by the majority.

There are cases holding that when the examination was made at a distant time and acts of intercourse with others have taken place the evidence is too remote. But in the instant case the examination was not made at a distant time; it was made at the first opportunity possible after the rescue of the girl, and within four days after the defendant, according to the girl's account, had ravished her. She was in the possession of the defendant and his confederates in this diabolical debauchery from the time she said defendant ravished her until she was rescued after a continuous search by her father and relatives for four days; and the evidence shows that the defendant had on Tuesday night, after the Sunday night the girl said he ravished her, told the brother of the girl in the presence of her father that he had not seen her and knew nothing about her.

The evidence shows that Dewey Pitts and Frazier carried the girl to the house of Ed Pitts' sister-in-law, Mrs. Reach, a woman of bad repute, and it is impossible to resist the conclusion from all the evidence that he then knew where she was, and that he had been aiding the others, Dewey Pitts, defendant's brother, and Joe Holder in their horrible debauchery of the girl. The defendant finally admitted to the father and others that he did know where the girl was on Sunday night, and that he then (on Tuesday night) knew about where she was.

The girl had been persuaded by her sweetheart, Clifford Frazier, upon promise of marriage and statement that he had a license to marry her, to leave her home and start out upon the journey which resulted so disastrously to her. She was in company with Frazier at one time; Ed Pitts at another; Dewey Pitts at another; sometimes two or three of them were with her; and Joe Holder, the man who had the car to take them to Birmingham to be married, came upon the scene and also raped the girl. There was evidence sufficient to go to the

jury upon the question of conspiracy of all these parties to debauch the girl, and evidence of the acts of one conspirator in the furtherance of a common unlawful enterprise is admissible against all. 1 Mayfield's Dig. p. 6, § 6; Pierson v. State, 99 Ala. 148, 13 South. 550.

A conspiracy may and often can only be proven by circumstances and actions. Marler v. State, 68 Ala. 580.

Conspiracy vel non is a jury question; and a wide latitude is allowed in proving it. Morris v. State, 17 Ala. App. 126, 82 South. 574.

The evidence of the girl's father as to her appearance and condition immediately after she was rescued from the men who had debauched her was clearly admissible. The only other question in the record is the refusal of the affirmative charge to the defendant. There was a conflict in the evidence; there was ample evidence to justify a conviction; and the court properly refused the affirmative charge.

I am of the opinion that the application for rehearing should be granted; that the judgment reversing and remanding this cause should be set aside, and the judgment of the circuit court affirmed.

PER CURIAM. Affirmed on authority of Ex parte State ex rel. Atty. Gen. (Re Pitts v. State), 210 Ala. 662, 99 South. 65.